# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Toland,        :
       Petitioner     :
            :
     v.         :   No. 315 M.D. 2018
            :   Argued: September 11, 2023
Pennsylvania Board of Probation   :
and Parole,          :
       Respondent   :


**BEFORE:**   **HONORABLE RENÉE COHN JUBELIRER,** President Judge
      **HONORABLE MICHAEL H. WOJCIK,** Judge
      **HONORABLE MARY HANNAH LEAVITT,** Senior Judge


**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**    **FILED: February 14, 2024**


Sitting in our original jurisdiction, we must decide two questions in the present civil discovery dispute: First, whether this case is moot (and corollary to that, whether a mootness exception applies), and second, whether the arguments raised by a Commonwealth agency to resist discovery—namely an agency regulation, a criminal history statute, and boilerplate objections—prevent the disclosure of information and documents sought by a petitioner.

The underlying dispute giving rise to the discovery issues before the Court involves Petitioner Christopher Toland's (Toland) pro se Amended Petition for Review/Mandamus (Amended Petition), seeking a writ of mandamus against the Pennsylvania Board of Probation and Parole (Board).[1] In short, Toland alleges that

---

[1] Subsequent to the filing of the Petition for Review in this matter, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also*
**(Footnote continued on next page…)**

the Board violated his constitutional rights by applying the incorrect parole guidelines and relying on incorrect information in denying him parole in 2017, 2018, and 2019. This Court previously overruled the Board's preliminary objections to the Amended Petition, and since then, the case has proceeded to discovery. *See Toland v. Pa. Bd. of Prob. & Parole*, 263 A.3d 1220 (Pa. Cmwlth. 2021) (*Toland I*). As part of discovery, Toland now seeks documents from his parole file, along with answers to interrogatories, to substantiate the allegations from the Amended Petition. The Board has objected to many interrogatories and requests for production of documents, citing the Board's confidentiality regulation, 37 Pa. Code § 61.2 (Regulation), and Pennsylvania's Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101-9183, as bars to disclosure. The Board also objects to most of the discovery requests on the basis that they are vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to admissible evidence; Toland asks this Court to dismiss the Board's objections. Finally, the Board now argues that the case is moot and should be dismissed because it has denied Toland parole again since the filing of the Amended Petition, specifically in November 2022. Toland opposes dismissal on the basis of mootness and moves to strike a declaration the Board attached in support of its filing.

Before this Court are: (i) the Board's Suggestion of Mootness/Application for Stay filed on March 6, 2023 (Suggestion), and Toland's response thereto; (ii) Toland's Motion to Strike the declaration of the Board Secretary, a document the Board filed along with its Suggestion (Motion to Strike); (iii) Toland's Motion to Dismiss the Board's Objections to Toland's Discovery Requests (Toland's Motion to Dismiss) filed on May 2, 2022, and the Board's Response to Toland's Motion to

---

Sections 6101 and 6111(a) of the Prisons and Parole Code (Parole Code), 61 Pa.C.S. §§ 6101, 6111(a).

2

Dismiss Board's Objections to Toland's Discovery Requests filed on June 20, 2022 (Board's Response); and (iv) Toland's Application to Leave to Supplement the Record filed on August 21, 2023 (Application to Supplement). After careful review, we deny the Board's Suggestion, and, accordingly, dismiss Toland's Motion to Strike and Application to Supplement as moot. Further, we grant Toland's Motion to Dismiss in part except as to five interrogatories discussed below.

## I. BACKGROUND

Toland is currently serving an 11- to 40-year sentence in state prison; his minimum sentence having expired in 2004. *Toland I*, 263 A.3d at 1225. As of the time of the filing of the Amended Petition, Toland had been denied parole 15 times. *Id.* In this litigation, Toland specifically challenges the parole denials from 2017, 2018, and 2019. *Id.* In our prior reported decision in this matter overruling the Board's preliminary objections to the Amended Petition, we allowed three claims to move forward, namely Toland's contentions that

> (1) the [Board] violated [Toland's] due process rights by relying on false information in denying [Toland] parole;
>
> (2) the Board violated [Toland's] due process rights by exercising its discretion in an arbitrary and capricious manner; and
>
> (3) the Board's application of the standards for parole of [the Parole Code] violated the *ex post facto* prohibitions of both the United States and Pennsylvania Constitutions.

*Id.* at 1224 (reformatted for readability) (footnotes omitted).

With respect to his first due process claim, Toland alleges the Board not only erroneously believed he had more than one rape conviction, but also that he had a history as a domestic violence offender. *Id.* at 1227. Citing *Rogers v. Pennsylvania*

3

*Board of Probation and Parole*, 724 A.2d 319 (Pa. 1999), and *Reider v. Pennsylvania Board of Probation and Parole*, 514 A.2d 967 (Pa. Cmwlth. 1986), Toland raises another due process claim, specifically that the Board failed to exercise its discretion at all in denying parole simply because he is a sex offender and not looking to the factors required under the Parole Code.[2]  *Id.* at 1228-29.  With respect to his *ex post facto* claim, Toland specifically avers that he would have been paroled under the pre-1996 Guidelines.[3]  *Id.* at 1227-28.[4]  We explained in *Toland I* that "[Toland] is not challenging the Board's exercise of discretion in denying parole, but the Board's

[2] We explained in *Toland I* that the Board must consider the following in making parole determinations:

> (1) The nature and circumstances of the offense committed.
> (2) Any recommendations made by the trial judge and prosecuting attorney.
> (3) The general character and background of the inmate.
> (4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by [the Department of Corrections (DOC)].
> (5) The written or personal statement of the testimony of the victim or the victim's family submitted under [S]ection 6140 [of the Parole Code, 61 Pa.C.S. § 6140] (relating to victim statements, testimony and participation in hearing).
> (6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.
> (7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence[,] and his complete criminal record.

*Toland I*, 263 A.3d at 1239 (quoting 61 Pa.C.S. § 6135(a)) (alterations in *Toland I*).
[3] Act of August 6, 1941, P.L. 861, *as amended*, *formerly* 61 P.S. §§ 331.1-331.8, repealed by Section 11(b) of the Act of August 11, 2009, P.L. 147.
[4] In *Toland I*, we explained that in 1996, the General Assembly amended the former Parole Code to make public safety the primary consideration.  *Toland I*, 263 A.3d at 1225.  We further noted that a change in the Parole Code may give rise to an *ex post facto* claim where "an inmate is able to demonstrate that the 1996 amendment, as applied to the inmate, creates a significant risk of prolonging the inmate's incarceration.  *Id.* at 1235 (quoting *Cimaszewski v. Bd. of Prob. & Parole*, 868 A.2d 416, 427 (Pa. 2005) (alterations in *Toland I*, brackets omitted)).

failure to follow the law in denying [Toland]'s parole by relying on incorrect or false information and making its decision solely based on the fact that [Toland] is a sex offender while ignoring other factors relevant to that decision." *Toland I*, 263 A.3d at 1233.[5]  The Board filed preliminary objections to the Amended Petition, which were overruled in *Toland I*.  The pleadings have since closed, and the parties are presently engaged in discovery.

On December 27, 2021, Toland served a first set of interrogatories and a request for production of documents on the Board. (*See* Notice of Service 12/27/2021.)  The Board answered Toland's requests on February 6, 2022, and February 7, 2022, respectively, responding to some of Toland's discovery requests and objecting to most. (*See* Toland's Motion to Dismiss, appendices (apps.) A, B.)  Subsequently, on March 7, 2022, Toland served a second set of interrogatories on the Board. (*See* Notice of Service received 3/9/2022.)  On April 2, 2022, the Board answered Toland's second set of interrogatories again responding to some requests and objecting to several others. (*See* Toland's Motion to Dismiss, app. C.)[6]

---

[5] The dissent believes that "Toland seeks what cannot be granted: a review of the [Board's] exercise of discretion." *Toland v. Pa. Bd. of Prob. & Parole*, __ A.3d __, __ (Pa. Cmwlth. 2024), slip op. at 13 (Leavitt, S.J., dissenting) (*Toland II*).  But in *Toland I*, we looked at the pleadings and the parties' arguments and explicitly concluded that Toland was **not** "challenging the Board's exercise of discretion in denying parole[.]" *Toland I*, 263 A.3d at 1233.  To the extent the Board believes Toland's discovery requests might evince a contrary intent on Toland's part, it could certainly have raised specific arguments challenging the requests on the basis of relevance, as more fully explained below.  Further, if the dissent is correct, that Toland really is just seeking "what cannot be granted[,]" upon application for summary relief, the **Board** can make that argument. *Toland II*, __ A.3d at __, slip op. at 13 (Leavitt, S.J., dissenting).  To be clear:  the narrow discovery matter now before the Court requires us only to consider whether the Board's specific arguments in opposing the requested discovery hold any water.

[6] The Board improperly titled its response as "Respondent Pennsylvania Parole Board's Answer to [Toland's] First Set of Interrogatories." (Toland's Motion to Dismiss, app. C at 1.)  The Board's opening paragraph, however, properly states it is answering [Toland's] **second** set of interrogatories. (*Id.*)

The Board's objections to Toland's first set of interrogatories, first request for production of documents, and second set of interrogatories prompted him to file his Motion to Dismiss, asking this Court to dismiss the Board's objections and compel it to provide the requested information or produce the responsive documents. On September 15, 2022, this Court ordered Toland and the Board to file memoranda of law in support of their respective arguments.

The Board filed the Suggestion on March 6, 2023, which this Court denied in part on April 25, 2023, insofar as the Board requested a stay, setting the mootness question for argument. In response to the Suggestion, Toland filed his Motion to Strike. Most recently, the Board requested a stay of discovery on July 13, 2023. This Court granted the stay of discovery on August 15, 2023, pending resolution of the matters scheduled for argument and discussed herein.

## II.     DISCUSSION

### A.      *The Board's Suggestion of Mootness*

#### 1.      Parties' Arguments

Because it is potentially dispositive, we begin with the Board's mootness argument. The Board asks the Court to dismiss Toland's Amended Petition, reasoning that it is now moot due to the most recent parole interview and resulting denial rendered in 2022. (Suggestion ¶¶ 19-26.) The Board relies on Article III, Section 2 of the United States Constitution, U.S. CONST. art. III, § 2, a United States Supreme Court decision regarding mootness as a matter of federal law, and unpublished federal district court opinions involving inmates seeking habeas corpus relief in federal courts due to adverse parole decisions. (Suggestion ¶¶ 19-20.) The Board reasons that "the only appropriate remedy [for Toland] would arguably be to

order a new parole interview," and thus, "[i]f Toland believes he is aggrieved by this new [2022] parole refusal decision, he has the right to file another petition . . . or he can file an amended petition." (*Id.* ¶¶ 21, 25.)

To support its mootness argument, the Board attached to its Suggestion a Declaration of Board Secretary Deborah Carpenter (Board Secretary). (Suggestion Ex. A (Declaration).) In it, she explains that the Board used the pre-1996 Guidelines in its 2022 decision, and she enumerates the reasons the interviewers denied parole in 2022. (*Id.* ¶¶ 11-12.) She also indicates Toland's next parole interview is slated for 2024. (*Id.* ¶ 13.)

Toland responds that "[w]hile all previous parole decisions may be moot, the false information . . . claim[ed] in the Amended Petition remains part of his parole file . . . . The [B]oard can not [sic] just claim that since Toland had a new interview and decision that this false information is no longer relevant." (Toland's Memorandum of Law in Support of Petitioner's Motion to Dismiss Respondent's Objections to Petitioner's Discovery Requests (Toland's Memorandum) ¶¶ 21, 26, 31, 39.)

## 2. Analysis

As a threshold matter, instead of citing to Pennsylvania mootness caselaw, the Board begins its argument by referring to *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) (*Arizona*), for the proposition "that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." (Suggestion ¶ 19 (internal quotation marks omitted).) However, that excerpt leaves out the first part of the quotation from Justice Ginsburg's opinion: "To qualify as a case **fit for federal-court adjudication**, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizona*, 520 U.S. at 67 (internal quotation marks and citation omitted) (emphasis

added).  The Board's reliance on federal mootness caselaw is, of course, misplaced.  Article III only restricts federal courts—not state courts—in their exercise of judicial power.  *See, e.g.*, *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467 (Pa. 2021) (contrasting Pennsylvania justiciability principles—which are purely prudential and judicially created—from federal equivalents, which implicate both the United States Constitution and prudential principles).

Because the appropriate lens for mootness in this Court is our Pennsylvania body of mootness cases, it is necessary to examine those cases and principles.  This Court has explained that

> cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation.  The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome.

*Magnelli v. Pa. State Civ. Serv. Comm'n*, 423 A.2d 802, 804 (Pa. Cmwlth. 1980) (quoting *In re Gross*, 382 A.2d 116, 119 (Pa. 1978)).  In sum, an intervening change in the factual landscape of a case can render a party's injury incapable of "redress[] by a favorable judicial decision."  *Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004).  Thus, the critical inquiry in determining whether a case has become moot is whether the court's decision could, in substance, accord the injured party relief.

Although it is "axiomatic" that "courts will not decide moot questions," *Public Defenders Office of Venango County v. Venango County Court of Common Pleas*, 893 A.2d 1275, 1279 (Pa. 2006), three exceptions to that axiom exist:  "[(i)] where the conduct complained of is capable of repetition yet likely to evade review, [(ii)] where the case involves issues important to the public interest[,] or [(iii)] where

8

a party will suffer some detriment without the court's decision," *Sierra Club v. Pa. Pub. Util. Comm'n*, 702 A.2d 1131, 1134 (Pa. Cmwlth. 1997). Moreover, whether to nonetheless decide a moot case falls within this Court's discretion. *See Harris v. Rendell*, 982 A.2d 1030, 1036 (Pa. Cmwlth. 2009) ("It is within the [C]ourt's 'discretion to decide substantial questions, otherwise moot, that are capable of repetition unless settled.'"), *aff'd*, 992 A.2d 121 (Pa. 2010) (quoting *In re Bishop*, 717 A.2d 1114, 1116 (Pa. Cmwlth. 1998)).

In *Coady v. Pennsylvania Board of Probation and Parole*, 804 A.2d 121 (Pa. Cmwlth. 2002), this Court decided to hear an otherwise moot case under the "great public importance" exception. *Coady*, like the case *sub judice*, involved the question whether application of the post-1996 parole guideline amendments to persons convicted prior to those amendments was unconstitutional and, consequently, whether, as the Court saw it, "more violent inmates [would] re-enter society without the benefit of parole." *Id.* at 124. In a different case in the parole context involving the contours of the so-called "prisoner mailbox rule," the Court declined to hear the case—considered moot due to the petitioner's release from incarceration—despite its "great public importance." *Taylor v. Pa. Bd. of Prob. & Parole*, 746 A.2d 671, 675 (Pa. Cmwlth. 2000). The majority reasoned, over a dissenting opinion, that "the issues raised . . . are capable of repetition . . . [but] are not likely to evade review," concluding that similarly situated inmates would be able to raise it before release. *Id. See also Harris*, 982 A.2d at 1036-37 (declining to find capable of repetition yet evading review exception where the governor briefly suspended parole to conduct review but parole had resumed); *Mistich*, 863 A.2d at 121 (declining to find capable of repetition yet evading review exception where inmate had completed sentence).

9

Finally, two factual predicates must exist for courts to invoke the capable of repetition yet evading review exception. Specifically, (1) the action the complaining party challenges must be so short in duration that it would have ended by the time the parties could fully litigate the issue, and (2) a reasonable expectation must exist that the offending party would subject the complaining party to the same exact action again. *See Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*, 49 A.3d 445, 449 (Pa. Cmwlth. 2012). *See also Brouillette v. Wolf*, 213 A.3d 341, 368 (Pa. Cmwlth. 2019) (setting forth same two prerequisites for capable of repetition yet evading review exception as *Philadelphia Public School Notebook* and tracing these requirements to the United States Supreme Court's decision in *Sosna v. Iowa*, 419 U.S. 393 (1975)).

With these principles in mind, we turn to the federal district court memoranda upon which the Board relies. It urges this Court to follow the federal district court's approach with habeas petitions relating to parole denials. It cites to, for example, *Goodman v. Kerestes* (M.D. Pa., No. 1:14-CV-01319, filed November 3, 2016), 2016 WL 7365208, at *2, in which the United States District Court for the Middle District of Pennsylvania (Middle District) stated that "[a]n earlier parole decision is rendered moot by a subsequent parole decision." *Kerestes* involved an inmate who had been denied parole and who challenged that denial through the vehicle of federal habeas review. The Middle District reasoned that

> the only appropriate remedy . . . would be a new hearing before the Board, and since [the petitioner] has already been afforded two new parole hearings . . . the instant habeas petition is moot, as are challenges to **any** denials of parole prior to . . . the date of the most recent parole denial.

10

*Id.* (emphasis in original).[7]

In another case, *Alex v. Gavin* (M.D. Pa., No. 1:CV-14-0261, filed December 7, 2015), 2015 WL 8012825, at *3, the Middle District specifically explained that the petitioner there lacked standing because his subsequent denials of parole mooted his challenges to the previous denials. The *Alex* Court reasoned that by obtaining a new parole hearing—the relief the petitioner had requested to begin with—"he received the relief he was potentially entitled to in his habeas petition." *Id.*

Of course, these unpublished federal district court memoranda are only persuasive authority, and in its Suggestion, the Board has not explained precisely how or why this Court should adopt their reasoning.[8] In particular, there are two questions these cases raise: (i) whether the mandamus relief this Court can accord is analogous to the habeas relief available in federal court, and (ii) whether, even if that is true, this Court should proceed under a mootness exception.

First, it is important to determine whether the only remedy this Court could accord in mandamus is a new parole hearing, because if so, the logic of the federal cases is more persuasive. Our Supreme Court has explained that

> mandamus is chiefly employed to compel the performance (when refused) of a ministerial duty, or to compel action (when refused) in matters involving judgment and discretion. It is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken.

---

[7] *Barnes v. Wenerowicz*, 280 F.R.D. 206 (E.D. Pa. 2012), discussed *infra*, calls this assumption into question. There, the United States District Court for the Eastern District of Pennsylvania actually granted immediate release as the remedy in that habeas proceeding, noting that "[a]lthough that is an extreme remedy, it is necessary here." *Id.* at 223.

[8] While not binding, decisions from the federal district and circuit courts may be cited for their persuasive value. *Edinger v. Borough of Portland*, 119 A.3d 1111, 1115 (Pa. Cmwlth. 2015).

*Pa. Dental Ass'n v. Ins. Dep't*, 516 A.2d 647, 652 (Pa. 1986) (*Dental Association*). The language of the *Dental Association* case suggests that this Court could only compel the Board to hold a new hearing. However, other cases imply a broader power where a petitioner seeks mandamus to correct an abuse of discretion. For example, the Supreme Court has explained that "[a] proceeding in mandamus is available to compel the Board . . . to [i] conduct a hearing **or** [ii] **correct a mistake in applying the law**." *Bronson v. Bd. of Prob. & Parole*, 421 A.2d 1021, 1023 (Pa. 1980) (emphasis added). *See also Maxwell v. Bd. of Sch. Dirs. of Sch. Dist. of Farrell*, 112 A.2d 192, 195 (Pa. 1955) ("**[U]nless** the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law[, the court] cannot interfere with or control the official's discretion or judgment.") (internal parentheses omitted) (emphasis added). *Maxwell*, then, suggests that where, as here, a party alleges discretion to have been arbitrarily exercised or based upon a mistaken view of the law, the court **could** "interfere" with the Board's discretion or judgment. These cases suggest that this Court can compel the Board to "correct a mistake in applying the law," implying the power to cause the Board to revisit a previous discretionary decision **despite** an intervening parole denial. *Bronson*, 421 A.2d at 1023.

Moreover, we are not convinced that even in the federal habeas context the courts uniformly perceive the constraints in the same manner as did the *Alex* and *Kerestes* Courts. *See, e.g.*, *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003) (*Mickens-Thomas II*) (directing the Board to conduct a new hearing based on the court's legal conclusions and noting that it "expect[s] that, on remand, the Board will not be defensive, but instead will fairly consider Thomas's application **in the light of our observations** and Ex Post Facto prohibitions") (emphasis added). *See*

*also Mickens-Thomas v. Vaughn*, 355 F.3d 294 (3d Cir. 2004) (*Mickens-Thomas III*) (remanding to district court with instructions to order the Board to release inmate after Board declined to comply in good faith with the United States Court of Appeals for the Third Circuit's requirements as set forth in *Mickens-Thomas II*).

Therefore, to the extent they reflect the state of the law in federal courts, those federal district court cases on which the Board relies are distinguishable from this matter because those courts reasoned the only relief they could provide was prospective—ordering a new hearing. Our cases teach that our power in mandamus is not similarly limited. Indeed, Toland alleges, in part, that the alleged factual inaccuracies in his file continue to taint any subsequent parole denial. As discussed above, the key question is: Can this Court still provide Toland relief, despite the intervening parole denial? Based on Toland's allegations and this Court's mandamus principles, the answer to that question is "yes." Accordingly, this Court declines to adopt the distinguishable reasoning of *Alex* and *Kerestes*. Therefore, we deny the Board's Suggestion.

However, even assuming the Board is correct, and this case is moot, an alternate, independent basis for our decision to proceed is the capable of repetition yet evading review exception to the mootness doctrine. Consider what would happen if this Court found the case moot and dismissed it. The Board suggests the appropriate action would be for Toland to file a new petition to allege any possible defects with the 2022 parole denial. Assuming Toland stated a viable claim, the parties would be back before this Court with a discovery dispute, likely identical to the one before us. Based on the pace of this litigation, and litigation in general, by the time Toland achieved any meaningful progress in litigation alleging defects with his 2022 parole denial, a subsequent parole interview and decision would likely have

mooted his case—which is scheduled to take place in 2024. In that way, Toland would be stuck on a hamster wheel of litigation, reaching discovery on a petition, likely only to have a subsequent denial of parole moot his case.[9] Thus, this scenario satisfies both requirements for this exception under *Philadelphia Public School Notebook*, 49 A.3d at 449, in that (i) Toland would likely be back before this Court complaining of the same conduct, namely, the Board's refusal to produce discovery, and (ii) the pace of the litigation would be too slow for this Court to decide these issues before becoming moot again.

With respect to mootness, the dissent notes that "Toland appears to have been granted the relief he seeks[.]" *Toland II*, __ A.3d at __ (Leavitt, S.J., dissenting), slip op. at 12.[10] However, even if Toland has been granted relief, the Board's objections, which are likely to be raised in the future, could well evade our review. It is true that "[a] decision of the [] Board to deny an inmate's application for parole is beyond judicial review except in a very narrow constitutional case." *Id*. at __, slip op. at 1. But the dissent's approach would—even in cases like this, where a petitioner **has** stated a claim in that very narrow constitutional case—always deprive

---

[9] The dissent faults Toland for not having "challenged the 2022 parole decision[.]" *Toland II*, __ A.3d at __, slip op. at 11-12 (Leavitt, S.J., dissenting). However, as discussed with respect to the procedural history of this case, we scheduled argument on the Board's Suggestion to occur simultaneously with the merits of this underlying discovery dispute. Given that there was the possibility of the Court not dismissing the case as moot, Toland could have reasonably concluded that it was premature for him to seek leave to file a Second Amended Petition to allege issues with the 2022 denial.

[10] In addition, given that Toland filed this Motion to Strike, it is not accurate for the dissent to say that Toland has not "contested the [] Board's statement that the pre-1996 Parole Code standards were used to arrive at its decision to deny him parole in 2022." *Toland II*, __ A.3d at __, slip op. at 12 (Leavitt, S.J., dissenting).

14

a petitioner of the ability to move forward because the Board could simply **say** it had applied the correct guidelines and moot the case.[11]

---

[11] The dissent believes the capable of repetition yet evading review exception to mootness does not apply here, pointing to, *inter alia*, language cited in *Brouillette* from our Supreme Court's 1952 decision in *Wortex Mills v. Textile Workers of America, C.I.O.*, 85 A.2d 851 (Pa. 1952), in which the high Court said "[i]t is only in very rare cases where exceptional circumstances exist or where matters of great public importance are involved, that this court ever decides moot questions or erects guideposts for future conduct or actions." (cited by *Brouillette*, 213 A.3d at 368). Notably absent from the *Wortex Mills* Court's discussion of mootness exceptions is capable of repetition yet evading review, which seems not to have become part of the Pennsylvania Supreme Court's jurisprudence until 1971. *See Apple Storage Co. v. Consumers Educ. & Protective Ass'n*, 272 A.2d 496, 497-98 (Pa. 1971). Thus, to the extent *Wortex Mills* is silent as to the mootness exception in question here, it no longer reflects the state of Pennsylvania law. Notably, our Supreme Court's more recent formulation of the requirement has retained the great public importance language as one exception but has dropped the "exceptional circumstances" and "rare cases" language, seemingly having replaced it with capable of repetition yet evading review. *See, e.g.*, *Linkosky v. Dep't of Transp., Bureau of Driver Licensing*, 247 A.3d 1019, 1023 n.4 (Pa. 2021) (framing the issue without reference to "exceptional circumstances"); *In re Y.W.-B.*, 265 A.3d 602, 612 n.8 (Pa. 2021) (same). Because, as discussed above, Toland's case is likely capable of repetition yet evading review, satisfying the two factors discussed in *Brouillette* and *Philadelphia Public School Notebook*, it falls within an exception to mootness, assuming *arguendo* it is moot.

The dissent further explains that

> Toland filed his initial petition for review over 12 years after he was denied parole in March 2004, and nearly 9 months after he was denied parole in August 2017. Toland did not file the instant [A]mended [P]etition until nearly two years after he was denied parole in December 2018, and nearly [a] year after he was denied parole in October 2019.

*Toland II*, __ A.3d at __, slip op. at 12-13 n.9 (Leavitt, S.J., dissenting). First, we do not see how a nine-month delay between discovering an alleged harm (the 2017 denial) and filing suit in the first instance is unreasonable or suggests in any way this mootness exception should therefore not apply. Second, these observations ignore the reality of litigation. Between the filing of the original petition for review and the Amended Petition, the Board filed preliminary objections, an answer and new matter, an application for summary relief, and an application to dismiss, all of which Toland answered. Indeed, it was only a month after this Court's September 11, 2020, Order denying the Board's application to dismiss that Toland filed this instant Amended Petition.

15

*B.    Toland's Motion to Strike*

Toland filed the Motion to Strike the Declaration of the Board Secretary appended to the Board's Suggestion.  (Motion to Strike ¶¶ 1-2.)  He argues that because Board Secretary has no direct knowledge of which guidelines the Board used, (*id.* ¶¶ 4, 5), the Declaration should be stricken.  The Board has not filed a response to Toland's Motion.

Having dismissed the Board's Suggestion, we need not reach the question of whether to strike the Declaration filed in support thereof.  Therefore, we dismiss Toland's Motion to Strike as moot.

*C.    Requests for Production*

The Board argues that the production of several documents requested by Toland would violate the Regulation, CHRIA, and in one instance Pennsylvania Rule of Criminal Procedure 703, Pa.R.Crim.P. 703 (Rule 703).  It also asserts that certain document requests are overbroad, unreasonable, unduly burdensome, and not reasonably calculated to lead to admissible evidence.  It also suggests, in passing, that we consider the requests for production and related legal bases for the Board's objections in turn.[12]

1.    Parties' Arguments

In his first request (Request A), Toland asks the Board to produce "all documents relating to the identity of . . . [the] Board's] current and past . . . [m]embers, Hearing examiners, employees, representatives, attorneys, and all

---

[12] Instead of addressing these specific arguments the Board advances to resist production of the requested discovery, the dissent raises its own arguments.  Indeed, the dissent mentions, without analyzing, the Regulation, CHRIA, and the extent to which the Board relies on boilerplate objections.  *Toland II*, __ A.3d at __, slip op. at 8 n.8 (Leavitt, S.J., dissenting).

persons acting or purporting to act, on his behalf, in any parole interview or assessment concerning [Toland]." (Toland's Motion to Dismiss, app. A ¶ A.) However, in his Memorandum, Toland acknowledges that the request was "wide," so he now limits the scope of his request to the above information in relation to his last three parole denials. (Toland's Memorandum ¶ 3.)

The Board first points to its mootness argument, suggesting that only documents related to the most recent parole denial are relevant. (Board's Memorandum at 2.)[13] It asserts "the only document that would reflect who the identity of the decision makers . . . would be the PPB 361[,] . . . the Board's internal decision-making document," which it argues is protected under the Regulation. Thus, the Board argues, that document would need to be wholly redacted. (Board's Memorandum at 6.) In its Response to Toland's Motion to Dismiss, the Board initially raised an objection on the grounds that the request is vague, ambiguous, argumentative, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, citing Pennsylvania Rule of Civil Procedure 4011, Pa.R.Civ.P. 4011.[14]

Toland maintains he needs these documents to "identify[] those Board officials . . . to investigate how . . . false information came to be in his parole file." (Toland's Memorandum ¶ 6.) Specifically, he relates this back to "false information regarding his criminal offenses . . . which resulted in . . . [an] additional false statement on the decision sheet" related to domestic violence which Toland avers never occurred. (*Id.* ¶¶ 4- 5.)

---

[13] The Board in its Memorandum references the most recent parole denial as October 22, 2019, as the Memorandum was filed on November 16, 2022, several months before the Board filed its Suggestion.

[14] The Board does advance this argument with regard to Request A in its brief.

Toland also asks the Court to dismiss the Board's objections to document requests B, C, E, G, H, I, J, K, and L, which ask the Board to:

B. Produce all documents relating to the assessments made by the Sexual Offenders Assessment Board (SOAB) conducted on [Toland] in or around the years 1996-1999 which was requested by the . . . Board under 42 Pa.C.S.[] § 9799.24 [of the Sex Offender Registration and Notification Act].

C. Produce each Parole Decisional Instrument (PBPP-361) forms completed, the identity of person(s) filling it out and date completed for the fourteen (14) parole interviews conducted on [Toland][.]

. . . .

E. Produce each Level of Service Inventory-Revised (LSIR) assessment completed, the identity of person(s) evaluating it, and date completed for the fourteen (14) parole interviews conducted on [Toland].

. . . .

G. Produce each Static 99 assessment(s) completed, the identity of person(s) evaluating it and date completed for the fourteen (14) parole interviews conducted on [Toland].

H. Produce each DC-13A, Integrated Case Summary forms prepared by the Department of Corrections [(DOC)] for the . . . Board prior to all fourteen (14) parole interviews conducted on [Toland].

I. Produce each [DOC] vote sheets completed prior to all fourteen (14) parole interviews conducted on [Toland].

J. Produce each of the eight (8) [DOC] psychological reports transmitted and/or given to the . . . Board which have been completed o[n] [Toland] since his minimum date of January 2004.

K. Produce any report(s), evaluation(s), or assessments made by the [DOC] and provided to the . . . Board which indicate that [Toland] is a risk to the community.

18

L. Produce any court, police, criminal records, criminal complaint forms, pre-sentence reports, and psychological reports prepared by Philadelphia County and transmitted to the . . . Board which have been reviewed prior to each of the parole interviews conducted on [Toland].

(Toland's Motion to Dismiss, app. A ¶¶ B-C, E, G-L.)

The Board argues the Regulation prevents disclosure of each of the documents Toland requests because, in its view, the Regulation requires "information contained in a parolee's parole file [to remain] private and confidential and not subject to release, even when the individual is requesting information from their own file." (Board's Response ¶¶ 2-10.)  The Board relies on this Court's decision in *Coulter v. Pennsylvania Board of Probation and Parole*, 48 A.3d 516 (Pa. Cmwlth. 2012), to support the claim that a parolee (or here, would-be parolee) may not access his own file.  (Board's Memorandum at 7.)  Additionally, the Board offers a policy argument specifically related to Request C (the parole decisional instrument).  It argues that "[t]he release of this document in the discovery process will cause a chilling effect for Board Members and Hearing Examiners making paroling decisions[,] as allowing for discovery of this otherwise privileged document will hinder the Board in [its] deliberative process of making paroling decisions." (*Id.* at 9.)

The Board also argues that CHRIA, and specifically its prohibition on secondary dissemination found at Section 9106(d) of CHRIA, 18 Pa.C.S. § 9106(d), bars disclosure of each requested document, except documents C (parole decisional instrument) and A (identity of members, etc.). (Board's Memorandum at 8, 10-13.)  For each set of documents listed above, the Board repeats the same refrain:  that pursuant to Section 9106 of CHRIA, "a criminal justice agency which possesses protected information, but which is not the source of the information, shall not disseminate or disclose the information."  (*See, e.g.*, Board's Memorandum at 8.)

19

For each disputed document, the Board argues that Toland must seek the documents directly from the respective agencies, for example, the SOAB or DOC, if he wishes to view them. Specifically, as to Request L, the Board argues for the first time in its Memorandum that Rule 703 bars disclosure of the pre-sentencing reports.

Finally, the Board asserts that document requests C, E, G, I, J, and K are overbroad, unreasonable, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This is so, it argues, in part because the only relevant documents stem from the most recent parole denial, consistent with its mootness argument.

Toland advances several arguments in response. First, he contends that, because he is not requesting these documents under the Right-to-Know Law[15] (RTKL), *Coulter* and related cases are inapplicable here. (Toland's Motion to Dismiss ¶ 7.) Relatedly, he argues that because the "documents . . . requested concern his individual case and not any other parolee[,] . . . there are no confidentiality concerns." (*Id.* at 9; *see also* Toland's Memorandum ¶ 11.) Toland turns to a federal case to suggest that to overcome a claim of privilege, the party must "demonstrate not only the evidence sought is relevant and necessary to his case, but that it is not available from a source less intrusive upon the privilege." (Toland's Memorandum ¶ 9.) He further points to two federal cases to suggest that "the Board has produced either relevant portions of a [p]etitioner's parole file or the entire parole file to be reviewed." (Toland's Motion to Dismiss ¶ 8.)

In response to the Board's CHRIA argument, Toland relies on *Pennsylvania State Police v. Grove*, 119 A.3d 1102, 1108 (Pa. Cmwlth. 2015), *aff'd in part, rev'd in part*, 161 A.3d 877 (Pa. 2017), for the proposition that "the mere fact that a record

---

[15] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

20

has some connection to a criminal proceeding does not automatically exempt it under . . . CHRIA." He implies this logic overcomes the Board's argument that it is not permitted to disseminate the requested documents. (Toland's Memorandum ¶¶ 10, 36, 45, 50, 55.)

In partial response to the Board's argument that the requests for production are, *inter alia*, overbroad and unduly burdensome, Toland argues that even if the Board's mootness argument is correct, "the false information . . . remains part of his parole file . . . . The Board can not [sic] just claim that since Toland had a new interview and decision that this false information is no longer relevant." (*See, e.g.*, *id.* ¶ 31 and repeated for each relevant request.)

2.      Analysis – The Regulation

We first consider the applicability of the Regulation. The Regulation provides in relevant part that

> [r]ecords, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee[16] are private, confidential and privileged; except that a brief statement of the reasons for the actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board.

37 Pa. Code § 61.2. Our research has uncovered no other case involving this particular Regulation in the discovery context.

---

[16] Although the plain language of the Regulation suggests that the Regulation applies only to **current** "probationer[s] and parolee[s,]" this Court has held there is no reason to distinguish prospective probationers and parolees from current ones for purposes of administering the Regulation. *See Jones v. Off. of Open Recs.*, 993 A.2d 339, 343 (Pa. Cmwlth. 2010) ("For purposes of weighing the confidentiality of documents, we discern no basis to differentiate the records of one who receives parole from one who does not.").

It first bears noting here that the party seeking to invoke a privilege to prevent the production of discovery—here, a statutory privilege—has the burden of demonstrating the applicability of that privilege. *See Koken v. One Beacon Ins. Co.*, 911 A.2d 1021, 1025 (Pa. Cmwlth. 2006) (Cohn Jubelirer, J., single-Judge op.) (citing 6 Pa. Stand. Prac. § 34:35). [17] As the party seeking to invoke the Regulation to prevent disclosure, the Board shoulders the burden of showing it applies. Moreover, we have observed that "Pennsylvania law does not favor evidentiary privileges[,]" noting that "[e]xceptions to the demand for every man's evidence **are not lightly created nor expansively construed**, for they are in derogation of the search for truth." *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001) (quoting *Commonwealth v. Stewart*, 690 A.2d 195, 197) (Pa. 1997) (internal brackets, citations, and quotation marks omitted) (emphasis added).

The Board cites *Coulter* for the proposition that pursuant to the Regulation, "information contained in the parole file is private and confidential, and not subject to release, even when the individual is requesting information from their own file." (Board's Memorandum at 7.) This distillation, however, does not fully capture the scope of *Coulter*. There, a parolee who sought a specific record from her parole file alleged that the Board had already disclosed some of her file to others, and so it followed, in her view, that the Board must be estopped from raising the Regulation to prevent disclosure of the records in question. The Court rejected this argument out of hand. *Coulter*, 48 A.3d at 519. Second, the Court reasoned that the plain language of the RTKL exempted the disclosure of the requested records as a "record

---

[17] This Court's Internal Operating Procedures provide that "[e]xcept as provided in subsection (d) (relating to single-Judge opinions in election law matters), a single-Judge opinion of this Court, even if reported, shall be cited only for its persuasive value and not as a binding precedent." 210 Pa. Code § 69.414(b).

of an agency relating to a noncriminal investigation." *Id.* (citing Section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17)). Thus, in *Coulter*, the Court never directly ruled that it was the Regulation that prevented disclosure; rather it was the RTKL standing alone. The *Coulter* Court, as a policy matter, was concerned that if parole files were subject to disclosure under the RTKL—even to the parolee herself—"they would be open to the entire public at large which could have adverse effects on **all** parolees." *Coulter*, 48 A.3d at 519 (emphasis added).

This Court has decided other cases involving the Regulation and the RTKL, relying on slightly different reasoning. For example, in *Jones v. Office of Open Records*, 993 A.2d 339, 340 (Pa. Cmwlth. 2010), an inmate who had been denied parole requested that the Board, via the RTKL, produce "written parole recommendations by the sentencing judge and prosecuting attorney." There, the Court was persuaded that those documents were exempt from disclosure. It reasoned that because the Regulation predated the RTKL, it operated on its own to prevent disclosure of the documents. *Id.* at 342. In *Vu v. Pennsylvania Board of Probation and Parole*, 200 A.3d 627 (Pa. Cmwlth. 2018), an inmate who had been denied parole requested documents, including reports, evaluations, and assessments related to the reasons for denial of his parole. The *Vu* Court pointed to the RTKL's provision that documents "**exempt from disclosure under any** . . . **State** law or **regulation**" may not be produced. *Id.* at 633 (quoting Section 305 of the RTKL, 65 P.S. § 67.305, emphasis added). It pointed to the Regulation as one such regulation.

*Coulter* and the other RTKL cases are distinguishable from the instant discovery matter. Requests under the RTKL, as the *Coulter* Court pointed out, implicate unique policy concerns, namely, the potential for **public** access to sensitive information in parolees' files. The *Coulter* Court noted specific concern that

23

allowing the parolee herself to access records in her file **through the mechanism of the RTKL** would mean those records would necessarily, then, become available to the public at large. Therefore, it makes more sense to limit public access to sensitive parole files via the RTKL, even if the parolee or would-be parolee cannot access them, than it does in the discovery context. That is so because discovery, of course, does not implicate the RTKL's policy concern of wide potential public disclosure, especially given the safeguards courts may erect around the discovery process. *See, e.g.*, Pennsylvania Rule of Civil Procedure 4012, Pa.R.Civ.P. 4012 (detailing requirements for protective orders in civil discovery).

Here, Toland—his complaint now having survived preliminary objections—requires discovery to substantiate his claims. If produced, his file would be turned over only to him, and unlike the parolees in *Coulter*, *Jones*, and *Vu*, Toland's receipt of his file in the discovery context would not render it available to the public at large.

Having now found *Coulter* and the RTKL cases involving the Regulation distinguishable, the question whether the Regulation's plain language bars disclosure of the documents remains. By urging the Court to consider the RTKL cases interpreting the Regulation, the Board has placed the correct construction of the Regulation at issue, and as such, this Court may turn to statutory construction principles in determining whether its meaning is consistent with the Board's approach.[18]

As a threshold matter, Pennsylvania courts recognize that "[s]tatutory construction rules apply equally to the interpretation of administrative regulations." *Wheeling-Pittsburgh Steel Corp. v. Dep't of Env't Prot.*, 979 A.2d 931, 937 (Pa.

---

[18] Indeed, this Court has independently consulted the dictionary to define terms where neither party had included that definition in its briefing. *See, e.g.*, *Lower Swatara Township v. Pa. Lab. Rels. Bd.*, 208 A.3d 521, 531 (Pa. Cmwlth. 2019).

24

Cmwlth. 2009). In determining the meaning of a regulation, courts must look to, in addition to the plain language, the specific **context** in which language is used.[19] *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013) (referencing Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a)). Only after having established ambiguity may courts turn to the canons of construction. *Pa. Associated Builders & Contractors, Inc. v. Dep't of Gen. Servs.*, 932 A.2d 1271, 1278 (Pa. 2007). Where "two different ways" to read the language exist, and "the statutory language is reasonably capable of either construction, the language is ambiguous." *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016). Potentially relevant canons provided by the legislature in resolving ambiguities here are the "occasion and necessity" for the Regulation, 1 Pa.C.S. § 1921(c)(1), "circumstances under which it was enacted," *id.* at (c)(2), "mischief to be remedied," *id.* at (c)(3), "object to be attained," *id.* at (c)(4), and "consequences of a particular interpretation," *id.* at (c)(6).

The first step is to "start, as we must, with the [Regulation's] language." *Pa. Associated Builders*, 932 A.2d at 1278. The key language in the Regulation is the phrase "private, confidential and privileged." The phrase itself is not defined by the regulations nor are any of the individual words that comprise it. *See* 37 Pa. Code § 61.1 (definitional section). This Court has instructed that, in the absence of a provided definition, it can be appropriate to consult, *inter alia*, dictionaries to derive the meaning of text. *Lower Swatara Township v. Pa. Lab. Rels. Bd.*, 208 A.3d 521, 531 (Pa. Cmwlth. 2019).

---

[19] "Statutory language 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Commonwealth v. Giulian*, 141 A.3d 1262, 1269 (Pa. 2016) (quoting *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016)).

The first definition of "private" is "intended for or restricted to the use of a particular person, group, or class." Webster's Ninth New Collegiate Dictionary 936 (1991). It can also mean "not known or intended to be **known publicly**." *Id.* (emphasis added). Black's Law Dictionary defines "private" as "[r]elating or **belonging to an individual,** as opposed to the public or the government," or "[c]onfidential; secret." Black's Law Dictionary 1315 (9th ed. 2009) (emphasis added). The relevant dictionary definition of "confidential," is "private, secret[,]" or "containing information whose unauthorized disclosure could be prejudicial to the national interest." Webster's Ninth New Collegiate Dictionary 275 (1991). Black's Law Dictionary defines the term as "(Of information) meant to be kept secret," giving the example of "confidential settlement terms." Black's Law Dictionary 339 (9th ed. 2009). Finally, the relevant definition of "privileged" is "not subject to disclosure in a court of law," Webster's Ninth New Collegiate Dictionary 936 (1991), or "[n]ot subject to the usual rules or liabilities; esp[ecially], not subject to disclosure during the course of a lawsuit . . . [e]njoying or subject to a privilege," Black's Law Dictionary 1319 (9th ed. 2009).

Those definitions raise three basic questions: Private and secret **from whom?** If not to be known publicly, **then to be known to whom?** If privileged, **who, holding the privilege, may waive it?** We can resolve the answers to these questions when we read the terms at issue, as we must, with an eye toward the context of the Regulation as a whole. Notably, immediately after the Regulation's admonition that parole files be kept private, confidential, and privileged, the rest of the Regulation reads: "**[E]xcept** that a brief statement of the reasons for actions by the Board . . . will at all reasonable times be open to **public inspection** . . . ." 37 Pa. Code § 61.2 (emphasis added). This **exception** to the general rule is phrased as disclosure to the

26

public, and so it suggests the general rule stated before the semicolon should be thought of as **non-public**. Put another way, the drafters of this Regulation must have been concerned about disclosure of parole file information to the **public** in crafting the general rule that the information be private, confidential, and privileged because it phrases the only **exception** to the rule as allowing **public** access to specified information. This reading also suggests that we can envision the parolee as the beneficiary of the Regulation, and thus, we can resolve those questions as follows. The information is private and secret from **the public**, not Toland. The information is not to be known publicly, but rather **to Toland**. Toland, as the beneficiary of the privilege, holds it, **so he may waive it**. *See, e.g.*, *Maleski v. Corp. Life Ins. Co.*, 646 A.2d 1, 4 (Pa. Cmwlth. 1994) (noting that in the attorney-client privilege context, the holder-beneficiary of the privilege is the client who, accordingly, may waive it). Although it is also true that the Board members could benefit from the privilege insofar as they would want to prevent disclosure of their decisional information, we find that the strict construction of privilege in discovery, *see Prison Health Services*, along with the analysis above, militates against the conclusion that the Board members should be construed as the sole beneficiaries of the privilege.

We also observe the public/parolee contrast we read in the structure of the Regulation also squares with the logic of the RTKL cases, as there, the concern was that disclosure through the RTKL to the parolee herself would effectively cause the file to become **public**. Therefore, the plain language of the Regulation suggests that the Regulation prevents disclosure to the public, not to parolees themselves in the discovery context.

Further supporting this interpretation are the federal cases in which it appears the Board has produced documents similar to those Toland requests here. For

27

example, Toland cites to *Barnes v. Wenerowicz*, 280 F.R.D. 206 (E.D. Pa. 2012), a federal case in which an inmate sued the Board in relation to a parole denial, arguing that the Board has produced the type of information in previous litigation that he requests now. There, in a footnote, the district court pointed out the record is comprised of a two-volume appendix, the first of which "contains **copies of documents from [the petitioner's] parole file,** which are Bates stamped with page numbers starting with the prefix 'PBPP.'" *Id.* at 208 n.2 (emphasis added). Throughout the *Barnes* opinion, the district court cited to several documents that Toland requests in the current litigation. *See, e.g.*, *id.* at 209 (LSI-R psychological assessment and DOC's parole recommendation), 210 (parole interview notes). *See also Mickens-Thomas v. Vaughn*, 217 F. Supp. 2d 570, 580 (E.D. Pa. 2002) (*Mickens-Thomas I*), ("Stipulation 6 provides that each time the Board refused parole to [the] petitioner, the decision maker had access to the Board's entire file **and that any document reviewed or considered by the Board is contained in that file marked as Exhibit R9**.") (emphasis added), *aff'd*, *Mickens-Thomas II.*

At oral argument, the Board explained that federal courts do not recognize the same claims of privilege as we must. That said, however, we observe that these cases do, nonetheless, raise questions about the policy concerns the Board purports to have regarding the "chilling effect" the release of, namely, parole interview notes would have, (Board's Memorandum at 9), and it also calls into question the Board's urged interpretation of the Regulation.

Given this analysis, we first decline, as the Board urges, to extend the reasoning of the RTKL cases involving the Regulation, as they are distinguishable both on their facts and as a matter of policy. Second, we note that our reading of the plain language of the Regulation does not preclude disclosure to a parolee in

discovery. Accordingly, we decline to view the Regulation as a bar to the production of the documents Toland seeks in this litigation.

      3.     <u>Analysis – CHRIA</u>

We next consider whether CHRIA might prevent production of the documents. The overall purpose of CHRIA's statutory scheme is to "control the collection, maintenance, dissemination[,] or receipt of criminal history record information." *Garner v. Bureau of Pro. & Occupational Affs., State Bd. of Optometry*, 97 A.3d 437, 442 (Pa. Cmwlth. 2014). The general rule of Section 9106—the section on which the Board relies—is set forth in subsection (a) and directs that the following three types of information not be collected in a "central repository" maintained by the Pennsylvania State Police:[20] intelligence information, investigative information, and treatment information (protected information).[21] 18 Pa.C.S. § 9106(a). Section 9106 then sets out where and how these three types of information may be maintained within criminal justice agencies,[22] 18 Pa.C.S. §

---

[20] Section 9102 of CHRIA defines the central repository as the "central location for the collection, compilation, maintenance and dissemination of criminal history record information by the Pennsylvania State Police." 18 Pa.C.S. § 9102.

[21] "Intelligence information" is "[i]nformation concerning the habits, practices, characteristics, possessions, associations[,] or financial status of any individual compiled in an effort to anticipate, prevent, monitor, investigate[,] or prosecute criminal activity . . . ." 18 Pa.C.S. § 9102. "Investigative information" is "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." *Id.* Finally, "[t]reatment information" is "[i]nformation concerning the medical, psychiatric, psychological or other rehabilitative treatment provided, suggested or prescribed for any individual charged with or convicted of a crime." *Id.*

[22] CHRIA's definitional provision explains that

> [c]riminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards, the facilities and administrative offices of the Department of [Human Services] that provide care, guidance and control to

**(Footnote continued on next page…)**

29

9106(b), and how criminal justice agencies which possess protected information may disseminate it to other agencies or individuals, 18 Pa.C.S. § 9106(c). Specifically, Section 9106(c)(4) provides that "[i]nvestigative and treatment information shall not be disseminated to any department, agency, or individual unless the department, agency, or individual requesting the information is a criminal justice agency which requests the information in connection with its duties." 18 Pa.C.S. § 9106(c)(4). Finally, and most relevant to the Board's argument, the secondary dissemination provision provides that "[a] criminal justice agency which possesses [protected] information . . . but which is not the source of the information, shall not disseminate or disclose the information to **another criminal justice agency** but shall refer the requesting agency to the agency which was the source of the information." 18 Pa.C.S. § 9106(d) (emphasis added).

We reiterate, as discussed above, that the Board has the burden of showing that CHRIA applies. *See One Beacon*, 911 A.2d at 1025. The first step in determining whether CHRIA bars production of the requested documents in Toland's file is to determine whether they amount to protected information under CHRIA. If they are not protected information under the statutory definition, Section 9106, of course, does not apply in the first instance. The Board's Memorandum refers broadly to the documents requested as "protected information." However, at no point does the Board provide any analysis as to why the information Toland seeks amounts to one of the three types of protected information. (*See, e.g.*, Board's Memorandum at 8.)

---

adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions or both.

*Id.*

Having not explained how the documents Toland seeks amount to protected information, the Board has not carried its burden of showing any privilege created by CHRIA applies. Thus, the holding of *One Beacon* alone teaches that it is proper to grant Toland's Motion to Dismiss as to the Board's CHRIA objections. However, this Court also has explained that failure to adequately develop an argument in briefing may result in waiver of that argument.[23] Pennsylvania Rule of Appellate Procedure 2119(a), Pa.R.A.P. 2119(a), directs counsel to include "**discussion** and citation of authorities . . . ." *See Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (emphasis added) ("[T]o the extent [a party's] claims fail to contain developed argument or citation to supporting authorities . . . they are waived."). Thus, the Board's lack of elaboration on a key element of the statute—whether the documents are appropriately classified as protected information—also amounts to waiver of this argument.

Accordingly, the Board's argument that CHRIA applies to bar production of these documents is unavailing for these two reasons.

### 4.     Analysis – Pa.R.Crim.P. Rule 703

In its original objection, the Board did not raise a Rule 703 objection to the production of Request L, Toland's pre-sentence reports. (Toland's Motion to Dismiss, app. A ¶ L.) Moreover, in one of its longest answers to one of Toland's interrogatories, the Board divulged several specific details included in the pre-

---

[23] This Court has indicated that, for purposes of its original jurisdiction, the Rules of Appellate Procedure operate as its local rules, and as such, issues relating to briefing in original jurisdiction implicate the relevant Rules of Appellate Procedure. *See Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 74-75 (Pa. Cmwlth. 2010) ("[T]he appellate rules are applicable to matters in an appellate court, including original jurisdiction matters. This applies to the briefing.") (citing Pa.R.A.P. 106).

sentence report. (*Id.*, app. C ¶ 10.) Without any analysis, the Board spends one sentence explaining that pursuant to Rule 703, "pre-sentence reports . . . shall be confidential, and not of public record." (Board's Memorandum at 14.) Our analysis as to the Board's Rule 703 argument is similar as to its CHRIA argument. The Board, having not elaborated on this objection (and having not initially objected) has not carried its burden to show that Rule 703 applies, and further, has waived this argument for failure to develop.

5. <u>Analysis – Overbroad, unreasonable, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence</u>

Generally, courts permit discovery into "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Pennsylvania Rule of Civil Procedure 4003.1, Pa.R.Civ.P. 4003.1. *See also One Beacon*, 911 A.2d at 1025 (noting key inquiry under Rule 4003.1 is whether "information sought is relevant, reasonable, and not privileged"). The Rules make clear, however, that "[n]o discovery . . . shall be permitted which . . . would cause unreasonable annoyance, embarrassment, oppression, burden[,] or expense . . . ." Pennsylvania Rule of Civil Procedure 4011(b), Pa.R.Civ.P. 4011(b). The burden is on the party challenging the discovery request to show that a given Rule 4011 limitation applies. *Ario v. Deloitte & Touche LLP*, 934 A.2d 1290, 1293 (Pa. Cmwlth. 2007). In addition, "releva[nce] depends upon the nature and the facts of the case, and any doubts are to be resolved in favor of relevancy." *Id.* We also note that discoverability and admissibility are distinct concepts, and Rule 4003.1(b) specifically states that "[i]t is not ground for objection that the information sought [in discovery] will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.Civ.P. 4003.1(b). Finally, "[d]iscovery matters are

within the discretion of the trial court." *Luckett v. Blaine*, 850 A.2d 811, 818 (Pa. Cmwlth. 2004), *overruled on other grounds by Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269 (Pa. Cmwlth. 2021).

This Court has dismissed discovery objections where the party challenging the discovery failed to adequately expand on an objection. *See, e.g., William Penn Sch. Dist. v. Pa. Dep't of Educ.* (Pa. Cmwlth., No. 587 M.D. 2014, filed Sept. 14, 2020), slip op. at 14 (Cohn Jubelirer, J., single-Judge op.) (involving Bear Creek Community Charter School) (declining to find unreasonable burden where party seeking to avoid discovery obligation failed to allege "any detail in support of its inability to comply"). Further, this Court declined to quash a different discovery request in the same case where "other than a **bald assertion** that it is unduly burdensome to comply, the [party challenging the discovery request] does not explain **how it will be burdened** if it is required to produce the documents." *Id.*, slip op. at 16-17 (Cohn Jubelirer, J., single-Judge op.) (involving Bear Creek Foundation, Inc.) (first emphasis added).[24]

Here, in objecting to the production of six documents on the basis that such production is overbroad, unreasonable, unduly burdensome, and not calculated to lead to admissible evidence, the Board has the burden under Rule 4011 to explain why production of the documents would be so. *Deloitte & Touche*, 934 A.2d at 1293. The Board does explain that because it believes Toland's allegations are moot, the only relevant documents would be related to the most recent denial. However, having already addressed the mootness argument, we remark that the Board does not

---

[24] As one federal judge explained in response to similar objections, "stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? **This language tells the Court nothing.**" *Fischer v. Forrest* (S.D.N.Y., No. 14 Civ. 1304, filed Feb. 28, 2017), 2017 WL 773694, at *3 (emphasis added).

33

address why nevertheless producing documents Toland argues are relevant to his case would be unreasonable or unduly burdensome.[25]

The dissent points out that "if there is nothing in the record from which relevancy can be ascertained, this Court **may** place the burden of establishing relevance upon the requesting party." *Toland II*, __ A.3d at __, slip op. at 9 (Leavitt, S.J., dissenting) (quoting *One Beacon*, 911 A.2d at 1025) (emphasis added). However, as discussed above, the general rule is that the "[t]he party seeking discovery need not justify complete relevance in advance[,]" and even more important, "the **objector** to a discovery request must demonstrate non-discoverability[.]" *One Beacon*, 911 A.2d at 1025 (emphasis added). The Board relied on boilerplate discovery objections instead of carefully crafting a relevance objection[26] for this Court to consider, and as discussed, the Board's only true

_____

[25] As discussed above, the Board only challenged the relevance of entire sets of documents on the basis that the only relevant documents relate to the most recent parole denial—an extension of its mootness argument. It certainly did not raise the species of relevance objection as to each individual document in the file the dissent advances, as addressed in detail *infra. See Toland II*, __ A.3d at __, slip op. at 9-10 (Leavitt, S.J., dissenting).

[26] The important qualifier to the above quotation from *One Beacon* is the phrase "if there is **nothing in the record** from which relevancy can be ascertained[.]" *One Beacon*, 911 A.2d at 1025 (emphasis added). Here, there is much the Board could have turned to if it wished to fashion a relevance objection. We would also note that the Pennsylvania Standard Practice section to which the *One Beacon* Court referred with respect to possible burden shifting cites as authority only one court of common pleas decision in support of that proposition. A few notable features of that case are worthy of our observation here. There, in the context of a deponent's refusal to answer certain questions and permit examination of certain documents, the court explained that it was impossible for the court to determine relevance because "we have no pleadings, nor do we have any knowledge of the nature of the action pending [in a foreign tribunal.]" *Chatinsky v. Dubrow Elecs. Indus., Inc.*, 27 Pa. D. & C. 2d 486, 488 (1962). It likened that unique situation to that of pre-complaint discovery, which of course, poses unique problems because in that scenario, the opponent simply cannot make out a proper relevance objection where it does not know what the proponent will plead. Thus, the *Chatinsky* Court explained that where the opponent does not have enough information to raise a relevancy objection, the court may shift the burden to the proponent of discovery. *Id*. Here, by contrast, the Board certainly had voluminous pleadings and a reported **(Footnote continued on next page…)**

34

relevance objection was of a blanket nature based on mootness. Confining ourselves to the parties' argument also counsels in favor of rejecting the dissent's argument that all Toland needs to make out his *ex post facto* violation is a copy of the Board's written explanation and the statute. *Toland II*, __ A.3d at __, slip op. at 10 (Leavitt, S.J., dissenting).[27] Accordingly, consistent with the general rule, we decline to shift the burden to Toland or to raise our own relevance objection sua sponte.[28]

In sum, because the Board has relied on boilerplate discovery objections without sufficient elaboration, the Court dismisses each of the Board's objections

---

decision of this Court explaining the contours of Toland's cause of action to raise its own specific relevance objections. It did not.

[27] Further in the context of a discovery dispute, the precise contours of Toland's *ex post facto* and due process claims, as a substantive legal matter, are not before the Court. Should the Board file an application for summary relief, asserting that its written explanation and comparison to the statute are all the Court needs to determine that Toland must not prevail, then it can do so. However, evidence of whether the Board has applied the correct standard, or completely ignored the factors it must consider because Toland is a sex offender, may exist beyond just the written explanation provided by the Board, and may surface upon review of the various documents contained therein.

Further, it is important to remember that just because something is subject to discovery does not mean that it will ultimately be admissible at a later point for Toland to attempt to prove his case. *See* Pa.R.Civ.P. 4003.1(b) and *George v. Schirra*, 814 A.2d 202, 205 (Pa. Super. 2002) ("[T]he relevancy standard during discovery is necessarily broader than it is for admission at trial. If it were not, there would be tremendous potential for relevant information and admissible evidence to be missed by the parties. The informational dragnet during discovery is meant to be wider so that all relevant and admissible evidence can be discovered pre-trial."). *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (Superior Court opinions are persuasive authority).

[28] This Court should not put itself in the position of making the arguments the Board could have made. Indeed, "courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. __, __, 140 S. Ct. 1575, 1579 (2020) (brackets, quotation marks, and citation omitted). The Board, with its sophisticated lawyers and the resources of the Commonwealth at its disposal, is well positioned to make the arguments it deems necessary in any given case.

that the production of these documents is overbroad, unreasonable, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.

*D.    Interrogatories*

1.    Parties' Arguments

Toland asks the Court to dismiss the Board's objections to the First Set of Interrogatories (First Set), numbers 9, 17, 18, 28, 35-36, 39-41, 44-50, and 55. They read as follows:

> 9.  Does the Board agree that the chances of an offender reoffending decrease with age?
>
> . . . .
>
> 17.  Does the Board agree that an offender reduces their risk of reoffending by taking responsibility for their crimes, having completed prescribed programming, having found a job and place to live upon release, having no misconducts, and receiving [DOC] parole support?
>
> 18.    Does the Board agree that [Toland] has taken responsibility for his criminal behavior?  If not, what leads the Board to make this determination and has this been addressed to him in any parole decision?
>
> . . . .
>
> 28.  The [current] Parole [Code] states that the Board is required to consider the factors of nature and circumstances of the offense(s) committed during the parole decision making process.  Does the Board only consider the facts of the case as stated in the police and/or court records or is the Board allowed to make [its] own assumptions and/or opinions as to what further actions, be it criminal or not, which may of [sic] occurred?  If the Board is only permitted to consider the facts of the case, explain why during several interviews [Toland] has been

36

asked about what might of [sic] occurred during his criminal offenses?

. . . .

35.  Is it common Board practice to continuously deny parole to an offender and instruct him to achieve the same directives year after year as has been done in [Toland's] case?

36.  If an offender is denied parole and at the next interview achieves the directives given to him by the Board, what more does that offender need to do to earn parole?

. . . .

39.  Is there a set standard or policy that the Board has in determining how long of a setback time is needed before the next scheduled interview for those offenders denied parole?

40.  Is it normal Board practice to give an offender a longer setback time than a previous denial decision?

41.  What had so fundamentally changed at [Toland's] last parole interview that caused the Board to give him a six (6) year setback time.

. . . .

44.  Has [Toland] received any positive votes in any of his parole interviews?  If so, identify when he received those votes.

45.  Does the Board agree that the [DOC] officials are a good judge of the character and risk of an offender since they are around the offender 24 hours a day, 7 days a week?

46.  What is a better judgment of [an offender's] risk, the reports, evaluations, assessments and observations of the [DOC] officials who are around an offender every hour of

37

every day or the evaluations, assessments and observations of Board officials who only see the offender in a 10-20 minute interview?

47. What is the best indicator of risk, the current behavior of the offender or their past behavior?

48. Does the Board agree that an offender who has spent 25 or more years in prison to be a significant stability time to show if he was any type of risk and show if he had any type of violent behavior or tendencies?

49. Does the Board agree that an offender who has been incarcerated for a substantial time period (25 or more years) who has never shown any type of violent behavior or tendencies is more than likely to continue that behavior and show himself to be stable?

50. Are parole officials able to really get to know an offender over the course of a 10-20 minutes interview or are offenders basically known and seen by their parole file?

. . . .

55. In all the parole decisions the Board has made, can the Board identify any other case in which an offender who has completed all programming, had no misconducts, and continuously earned [DOC] parole support be denied parole 14 or more times? If so, identify approximately how many cases this has occurred in.

(Toland's Motion to Dismiss, app. B ¶¶ 9, 17, 18, 28, 35-36, 39-41, 44-50, and 55.)

Toland also asks the Court to dismiss the Board's objections to the Second Set of Interrogatories (Second Set) numbers 8, 9, 28, 31, 33, 39, 43, and 54. Those read as follows:

8. Does [the] Board agree an offender's guilty plea equates to taking responsibility?[]

9.  Does [the] Board agree [Toland] was never accused, investigated, charged with criminal actions he committed Jan. 29 and 30 of 1993?  If not, identify records that bring to this determination.

. . . .

28.  Do any psychological evaluations cause the Board to feel inmate is not stable or other concerns[?]  ID psychologists, date of eval, and concerns.

. . . .

31.  Do any treatment profiles cause concern?  If so, identify dates, person conducting, and concerns.

. . . .

33.  Do any of these plans cause concern?

. . . .

39.  Does Board agree current version of 361 Sect. IV include decisional factors used by decision makers as reasons to grant or deny parole?

. . . .

43.  Does the Board agree under pre-1996 parole practices described by the Senate Judiciary Committee parole interviews subsequent to the initial parole denial are limited in scope to behavior of the offender and fulfillment of directives.

. . . .

54.  Does the Board agree with the statement that it is hard pressed to think of success factors more relevant to assessing likelihood of success on parole tha[n] one's behavior and attitude in prison?

(Toland's Motion to Dismiss, app. C ¶¶ 8-9, 28, 31, 39, 43, 54.)

The Board objected to five interrogatories but still provided a brief answer to them noting that it responded without waiving its objection. Those interrogatories are First Set numbers 9, 39, 40, and 41, and Second Set number 9. They are reproduced below again for convenience.

> 9. Does the Board agree that the chances of an offender reoffending decrease with age? **Answer**: Human behavior is difficult to predict.
>
> . . . .
>
> 39. Is there a set standard or policy that the Board has in determining how long of a setback time is needed before the next scheduled interview for those offenders denied parole? **Answer**: The Board considers multiple factors in determining fitness for parole. Parole is a privilege, not a right. Offenders may file applications for parole on a regular basis pursuant to the limitations provided for at 61 Pa.C.S. § 6139.
>
> 40. Is it normal Board practice to give an offender a longer setback time than a previous denial decision? **Answer**: The Board considers multiple factors in determining fitness for parole. Parole is a privilege, not a right. Offenders may file applications for parole on a regular basis pursuant to the limitations provided for at 61 Pa.C.S. § 6139.
>
> 41. What had so fundamentally changed at [Toland's] last parole interview that caused the Board to give him a six (6) year setback time. **Answer**: The Board considers multiple factors in determining fitness for parole. Parole is a privilege, not a right. Offenders may file applications for parole on a regular basis pursuant to the limitations provided for at 61 Pa.C.S. § 6139.
>
> . . . .

9.  Does [the] Board agree [Toland] was never accused, investigated, charged with criminal actions he committed Jan. 29 and 30 of 1993?  If not, identify records that bring to this determination.  **Answer**:  The Board attends to paroling actions related to judicially imposed sentences. However, criminal complaints filed in Philadelphia County accuse [Toland] of multiple criminal acts on January 29 and January 30[,] 1993.

(Toland's Motion to Dismiss, app. A ¶¶ 9, 39, 40, 41; app. B, ¶ 9.)  The Board objected to each of Toland's interrogatories on the basis that they are "vague, ambiguous, argumentative, overbroad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence."  (Toland's Motion to Dismiss, app. B; *see also* Board's Memorandum 4, 7, 9-14, 16.)[29]

In its Memorandum, the Board expanded on its reasoning as to interrogatories 45-50 and 55 of the First Set, arguing that they seek "speculative opinions" and that they are "rhetorical in nature."  (Board's Memorandum at 16.)  As to First Set, numbers 17-18, 28, 35-36, and 44, and Second Set, numbers 28, 31, 33, 39, 43, 54, the Board repeats an objection for each that the interrogatories are "speculative and conclusory and asks for the Board to provide its opinion regarding its deliberative process."  (*Id.* at 16-20 (also reiterating its objection under the Regulation); *see also* Toland's Motion to Dismiss, apps. A and B, for the original objections.)

In response, Toland maintains that despite its assertion to the contrary, the Board's responses to several interrogatories were not responsive to the question posed.  (*See, e.g.*, Toland's Memorandum ¶¶ 60, 74, 76, 78, 88.)  He responds to the objections and explains why each is relevant to his claims.  For several, he cites Federal Rule of Civil Procedure 33(a)(2), Fed.R.Civ.P. 33(a)(2),[30] for the proposition

---

[29] The Board also objects to the majority of these as requiring disclosure of confidential information in violation of the Regulation and CHRIA's secondary dissemination provision.

[30] Toland actually cites to Federal Rule of Civil Procedure 56(b), Fed.R.Civ.P. 56(b), for this proposition, but the text appears in the above-cited rule.

that "[a]n interrogatory which is otherwise proper is not objectionable because the answer will require an opinion or the application of law to fact." (*Id.* ¶ 81.) Finally, where charged with the allegation that a given interrogatory is vague, etc., Toland often counters by responding simply that it is not and providing a brief explanation why for each.

2. <u>Analysis – Vague, argumentative, overbroad, ambiguous, unduly burdensome, and not reasonably calculated to lead to admissible evidence</u>

The analysis on this point is almost identical to that above, with one additional point of law from the Pennsylvania Rules of Civil Procedure. Pursuant to Pennsylvania Rule of Civil Procedural 4006(2), written interrogatories "shall be answered fully and completely unless objected to, in which event the reasons for the objection shall be stated in lieu of an answer." Pa.R.Civ.P. 4006(2).

Accordingly, we reiterate our above conclusion with respect to these interrogatories. Here, too, the Board has not expanded on its boilerplate objections. Without significant explanation, it puts forth bald assertions, unsupported by specific facts establishing why the Board is unduly burdened, or the interrogatory is speculative, conclusory, rhetorical, vague, ambiguous, argumentative, overbroad, or not reasonably calculated to lead to discovery of admissible evidence. Moreover, our Rule of Civil Procedure on this point mirrors the federal rule Toland cites on this issue; it is also true under Pennsylvania law that an interrogatory is not "ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact." Pa.R.Civ.P. 4003.1(c). Thus, to the extent the Board argues that a given interrogatory calls for a "speculative opinion," that argument is inconsistent with Rule 4003.1(c).

Turning to the Board's argument that it did answer five interrogatories and that Toland "may not like the answer he received," (Board's Memorandum at 14),

the Court is satisfied that the Board has answered those five sufficiently. For example, number 9 of the First Set asks whether the Board agrees "that the chances of an offender reoffending decrease with age," to which the Board responded with an objection, but further said "[w]ithout waiving that objection, the Board responds . . . Human behavior is difficult to predict." (Toland's Motion to Dismiss, app. A ¶ 9.) The answers to those five questions comply with Rule 4006(2)'s requirement that the Board answer fully and completely. Thus, Toland's Motion to Dismiss First Set numbers 9 and 39-41, and Second Set number 9 is denied.

### 3. Analysis – The Regulation

Having already determined the Regulation does not bar the production of the documents Toland requests, we find no reason to adopt a different position as to the interrogatories.

## III. CONCLUSION

Having determined the November 2022 parole denial has not rendered this case moot, or, alternatively, that a mootness exception applies, the Court denies the Board's Suggestion. Accordingly, we dismiss Toland's Motion to Strike as moot. Further, we hold that the Regulation, in the context of civil discovery in a mandamus action in this Court, is not a *per se* bar on the production of documents contained in a parolee's file, nor do we find here that the Board has met its burden in showing that Section 9106 of CHRIA applies. Finally, confining ourselves to the arguments raised by the parties, we respectfully decline to accept the dissent's invitation to sua sponte raise issues of relevance and specific theories of the exact discovery Toland needs because the Board did not make those arguments. With the exception of those

five interrogatories discussed above, we grant Toland's Motion to Dismiss in part, thereby dismissing each of the Board's objections.

_____
**RENÉE COHN JUBELIRER,** President Judge

44

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher Toland, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 315 M.D. 2018 |
| | : | |
| Pennsylvania Board of Probation and Parole, | : | |
| | : | |
| Respondent | : | |

## O R D E R

**NOW**, February 14, 2024, the "Suggestion of Mootness/Application for Stay" filed by the Pennsylvania Board of Probation and Parole (Board) in the above-captioned matter is **DENIED**. Christopher Toland's (Toland) "Motion to Strike" and "Application to Leave to Supplement the Record" are **DISMISSED AS MOOT**. Toland's "Motion to Dismiss [the Board]'s Objections to [Toland]'s Discovery Requests" (Motion to Dismiss) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the foregoing opinion, as follows:

(1) The Motion to Dismiss is **DENIED** as to the First Set of Interrogatories numbers 9 and 39-41, and Second Set of Interrogatories number 9, and

(2) The Motion to Dismiss is **GRANTED** as to the remaining interrogatories and requests for production.

This Court's Order of August 15, 2023, staying discovery in the above-captioned matter is hereby **VACATED**, and the parties are hereby **ORDERED** to proceed with discovery.

_____
**RENÉE COHN JUBELIRER,** President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Toland,               :
              Petitioner   :
                         :
      v.                :  No. 315 M.D. 2018
                         :  Argued: September 11, 2023
Pennsylvania Board of Probation  :
and Parole,               :
             Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

DISSENTING OPINION               FILED:  February 14, 2024
BY SENIOR JUDGE LEAVITT

Respectfully, I dissent to the majority's order requiring the Pennsylvania Parole Board[1] (Parole Board) to comply with most of the discovery requests of Petitioner, Christopher Toland, and denying the Parole Board's suggestion of mootness.

A decision of the Parole Board to deny an inmate's application for parole is beyond judicial review except in a very narrow constitutional case. However, the raising of a constitutional claim does not trigger a right to examine the contents of an inmate's parole application file. Because Toland's discovery requests relate to the Parole Board's exercise of discretion on his application for parole, they are either irrelevant to his constitutional claim or overbroad in scope. Further, Toland's challenge to the Parole Board's denials of parole in 2017, 2018, and 2019

---

[1] Following the filing of the petition for review, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board. *See* Sections 15 and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa. C.S. §§6101, 6111(a).

has been rendered moot by the denial of his parole application in 2022, which he has not challenged.

It is Toland's legal theory that the Parole Board applied the current version of the Prisons and Parole Code (Parole Code),[2] and not the version of the parole statute[3] in effect when he committed his criminal offense. In this regard, Toland contends that the Parole Board has violated his rights under the *ex post facto* clause of the United States Constitution.[4]

It is important to put Toland's constitutional claim in context. To begin, "[p]arole is not a right in Pennsylvania, but a matter of grace." *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998). "An *ex post facto* law is one which is adopted after the complaining party committed the criminal acts and conflicts [sic] a greater punishment than the law annexed to the crime, when committed." *Byrd v. Pennsylvania Board of Probation/Parole*, 826 A.2d 65, 67 (Pa. Cmwlth. 2003) (internal citations omitted). Where an inmate asserts a violation of the *ex post facto* clause, he may not use that litigation to second guess the Parole Board's exercise of discretion in a denial of parole. Our Supreme Court has explained as follows:

> *Where* [] *discretionary actions and criteria are not being contested* but rather the actions of the [Parole B]oard taken pursuant to changed statutory requirements are being challenged, an action for mandamus remains viable as a means for *examining whether statutory requirements have been altered in a manner*

---

[2] 61 Pa. C.S. §§101-7301 (enacted 2009).

[3] Commonly known as the Parole Act (*former* Parole Law), Act of August 6, 1941, P.L. 861, *as amended*, *formerly* 61 P.S. §§331.1-331.34a, repealed by Section 11(b) of the Act of August 11, 2009, P.L. 147.

[4] U.S. CONST. art. I, §10, reads, in pertinent part: "No state shall . . . pass any Bill of Attainder, *ex post facto Law*, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." (Emphasis added.)

*that* violates the *ex post facto* clause. Such an action could be brought in the original jurisdiction of the Commonwealth Court.

*Coady v. Vaughn*, 770 A.2d 287, 290 (Pa. 2001) (emphasis added).

The 1996 amendments to the Parole Code provided that "the [B]oard shall *first and foremost seek to protect the safety of the public*" and "the [B]oard shall address input by crime victims and assist in *the fair administration of justice* by ensuring the custody, control and treatment of paroled offenders." *Former* Section 1 of the Act of August 6, 1941, P.L. 861, amended by the Act of December 18, 1996, P.L. 1098, *formerly* 61 P.S. §331.1 (emphasis added). Toland asserts that because the Parole Board's denial letter referred to the risk to the community, it improperly used the 1996 amendments to the *former* Parole Law, not the pre-1996 version.[5]

In *Byrd*, this Court explained that safety has always been a factor in deciding whether to grant parole. We explained that although the "language concerning 'protect[ing] the safety of the public' and 'assist[ing] in the fair administration of justice' was added to [Section 1] in 1996, these concepts are nothing new to the parole process and have always been underlying concerns." *Byrd*, 826 A.2d at 68. Ultimately, we concluded that the 1996 amendments did nothing to increase punishment, which was consistent with Supreme Court precedent. *See, e.g.*, *Hall v. Pennsylvania Board of Probation and Parole*, 851 A.2d 859 (Pa. 2004).[6]

Nevertheless, our Supreme Court has somewhat changed course on whether the 1996 amendments can implicate the *ex post facto* clause. It has explained as follows:

---

[5] Section 1 of the 1996 amendments are similar, but not identical, to the provisions of 61 Pa. C.S. §6102.

[6] *See also Winklespecht v. Pennsylvania Board of Probation and Parole*, 813 A.2d 688 (Pa. 2002), and *Finnegan v. Pennsylvania Board of Probation and Parole*, 838 A.2d 684 (Pa. 2003).

> [I]t is now clear that retroactive changes in the laws governing parole *may* violate the *ex post facto* clause. [*California Department of Corrections v.*] *Morales*, 514 U.S. [499,] 509 [(1995)] [] (holding that a change in parole law violates the *ex post facto* clause if the change in the law created a "sufficient risk of increasing the measure of punishment attached to the covered crimes"); *Garner*[ *v. Jones*], 529 U.S. [244,] 256 [(2000)] [] (holding that a change in parole rules violates the *ex post facto* clause if the amended rule creates a significant risk of prolonging an inmate's incarceration). The controlling inquiry in determining if an *ex post facto* violation has occurred is whether retroactive application of the change in the law "creates a significant risk of prolonging [the petitioner's] incarceration." *Garner*, 529 U.S. at 251 [] (citing *Morales*, 514 U.S. at 509[]). Therefore, under *Garner* and *Morales*, the 1996 amendment may be shown to violate the *ex post facto* clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him, creates a significant risk of prolonging his incarceration.

*Cimaszewski v. Board of Probation and Parole*, 868 A.2d 416, 426-27 (Pa. 2005). In other words, an *ex post facto* claim can be pursued where the inmate can demonstrate that, in his particular case, the 1996 version of the *former* Parole Law created a "significant risk of prolonging his incarceration." *Id*.

This demonstration by the inmate should require no more than an examination of the Parole Board's written denial of the inmate's application for parole and comparison to the statute. *Cimaszewski* did not announce a departure from the prime directive that a putative parolee's constitutional claim may not involve a "contest" to the Parole Board's "discretionary actions and criteria." *Coady*, 770 A.2d at 290.

I would deny Toland's motion to dismiss[7] the Parole Board's objections to the requests for production of documents and two sets of interrogatories.

"The Board's decision to grant or deny parole is not a decision in the ordinary sense, because, when released, a parolee is continuing to serve his or her sentence." *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997). *See also Rogers v. Pennsylvania Board of Probation and Parole*, 724 A.2d 319 (Pa. 1999) (parole decisions are not adjudications subject to appellate review). "Parole is nothing more than a possibility, and, when granted, it is nothing more than a favor granted upon a prisoner by the state as a matter of grace and mercy shown by the Commonwealth to a convict who has demonstrated a probability of his ability to function as a law-abiding citizen in society." *Weaver*, 688 A.2d at 770. Because parole is a matter of grace, a prisoner has no constitutionally protected liberty interest in being released from prison prior to the expiration of his maximum sentence. *Id*. The Parole Board has been granted broad discretion, and it alone determines whether the prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of the prison. *Reider v. Pennsylvania Board of Probation and Parole*, 514 A.2d 967, 971 (Pa. Cmwlth. 1986). Decisions to deny parole are generally "not appealable except to the extent that a constitutional or statutory violation has occurred." *Myers*, 712 A.2d at 794.

In *Toland v. Pennsylvania Board of Probation and Parole*, 263 A.3d 1220, 1233 (Pa. Cmwlth. 2021), we allowed Toland to pursue an *ex post facto* claim and subsidiary substantive due process claim. Nevertheless, "the only substantive due process rights afforded to a prisoner denied parole lie in making sure the [Parole]

---

[7] Generally, where a litigant challenges an objection to a discovery request or a failure to file any timely response, such as a written objection, the litigant files a motion to compel. *See generally* Pa.R.Civ.P. 4019.

Board followed the minimum duties required by the law." *Homa v. Pennsylvania Board of Probation and Parole*, 192 A.3d 329, 334 (Pa. Cmwlth. 2018). Importantly, mandamus "cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense." *McGinley v. Pennsylvania Board of Probation and Parole*, 90 A.3d 83, 93 (Pa. Cmwlth. 2014) (quoting *Weaver*, 688 A.2d at 777).

In his amended petition for review, Toland asserts that the Parole Board violated due process because the Parole Board considered false criminal history information, which was allegedly in his file. His principal claim is that the Parole Board violated the *ex post facto* clause of the United States Constitution. Toland seeks a writ of mandamus to compel the Board as follows:

> 2. Compel the [Parole Board] to produce to this Court the information, records, and documents the Board relied upon to state the false information concerning Toland's criminal record.
>
> 3. Order the [Parole] Board to remove the false information from Toland's parole file and records.
>
> 4. Order the [Parole] Board to forward verification of this removal and have the Board apply the appropriate adequate remedy at law since the Board considered false information in the parole decision making process.
>
> 5. Order the [Parole] Board to prepare revised reports, evaluations, and assessments on Toland since false information was used and relied upon to create the current reports, evaluations, and assessments being used in this case.
>
> 6. Order the [Parole] Board to immediately interview Toland for parole using the statutes, procedures, guidelines and discretion of the [*former* Parole Law].

Amended Petition for Review/Mandamus at 20-21.

To that end, Toland has served a request for production of documents and two sets of interrogatories upon the Parole Board. He seeks documents as

follows: a list of the Parole Board members, Hearing Examiners, and employees that acted in any parole interview or assessment concerning Toland in the last 3 parole denials; all documents related to assessments made by the Sexual Offenders Assessment Board between 1996-1999; the Parole Decisional Instrument forms completed for his 14 parole interviews; the Level of Service Inventory-Revised assessments completed for his 14 parole interviews; the Static 99 assessments completed for his 14 parole interviews; the Integrated Case Summary forms prepared for his 14 parole interviews; all Department of Corrections vote sheets; the 8 psychological reports the Department of Corrections provided to the Parole Board; any reports, evaluations, or assessments indicating Toland is a risk to the community; and any court, police, criminal records, and pre-sentence reports prepared by Philadelphia County that were provided to the Parole Board. Toland Motion to Dismiss Board's Objections to Discovery Requests, Appendix A.

Toland's first set of interrogatories seeks information about Toland's risk of reoffending; whether Toland has taken responsibility for his criminal behavior; whether the Parole Board routinely denies parole to inmates and instructs them to meet the same goals each year; the amount of setback time before an inmate is scheduled for another parole interview; what changed to give Toland a 6-year setback; whether Toland received any positive votes in favor of parole; whether the Department of Corrections is a better judge of character than the Parole Board; the best indicator of risk to reoffend; whether 25 years in prison is sufficient to show an inmate is stable; and to identify all other inmates that have completed all programming, had no misconduct, and earned the Department of Corrections' support for parole but still were denied parole 14 times. *See* Toland Motion to Dismiss Board's Objections to Discovery Requests, Exhibit B.

Toland's second set of interrogatories seeks information on the factors the Parole Board considers when reviewing an inmate for parole; whether a guilty plea equates to taking responsibility for the offense; the Parole Board's knowledge of any criminal activity involving Toland occurring on January 29-30, 1993; what in the psychological evaluations causes the Parole Board to believe an inmate is unstable; whether any treatment profiles cause concern; the Parole Board's understanding of the pre-1996 and post-1996 parole practices; and what factors are more determinative of an inmate's success on parole than behavior and attitude in prison. *See* Toland Motion to Dismiss Board's Objections to Discovery Requests, Appendix C.

The Parole Board objects to Toland's discovery requests as neither reasonable nor reasonably tailored as to lead to the production of relevant information related to this case.[8] Board Brief at 4, 7, 9-12, 16. It explains that "mandamus may only be used in the context of a parole refusal 'to require the Board to follow appropriate procedures and apply the law properly in deciding whether to grant or refuse parole.'" *Id*. at 4 (quoting *Weaver*, 688 A.2d at 766). It further explains that because prior parole refusal decisions are mooted by a later decision, "the only decision that this Court can review as to whether or not the Board's decision-making was constitutional or in conformity with the Parole [Code]" is the most recent decision. Board Brief at 5. Accordingly, "only documents related to

---

[8] The Pennsylvania Rules of Civil Procedure expressly authorize a party to object to interrogatories and requests for production of documents on numerous grounds, including relevance. *See* Pa.R.Civ.P. 4006, 4009.12. The Parole Board advances several other objections, including its confidentiality regulation, 37 Pa. Code §61.2, and Pennsylvania's Criminal History Record Information Act, 18 Pa. C.S. §§9101-9183.

the most recent parole review decision issued on October 22, 2019[,] would be relevant." *Id.* at 6-7.

Discovery disputes "require courts to consider whether the information sought is relevant, reasonable, and not privileged." *Koken v. One Beacon Insurance Company*, 911 A.2d 1021, 1025 (Pa. Cmwlth. 2006). Our Court has explained:

> *Relevancy depends upon the nature and the facts of the individual case*, and any doubts are to be resolved in favor of relevancy. 6 STND. PA. PRAC. §34:23. The party seeking discovery need not justify complete relevance in advance. 6 STND. PA. PRAC. §34:24. . . . However, if there is nothing in the record from which relevancy can be ascertained, this Court may place the burden of establishing relevancy upon the requesting party. *Id.*

*Koken*, 911 A.2d at 1025 (emphasis added). *Further, discovery requests must be reasonable,* which is "'to be adjudged on the facts and circumstances of each case.'" *Id.* (quoting 6 STND. PA. PRAC. §34:32). Broad requests in the nature of a "fishing expedition" can be restrained by the court. *Koken*, 911 A.2d at 1025 (quoting 6 STND. PA. PRAC. §34:28).

None of Toland's document requests, with the possible exception of his criminal records, are relevant to his substantive due process claim that the Parole Board considered a false criminal history in its parole denials of 2017, 2018, and 2019.[9] As for his *ex post facto* claim, Toland must show that under the *former* Parole Law, he would have been paroled. *See Cimaszewski*, 868 A.2d at 428. None of Toland's document requests advance that claim. I would deny Toland's motion to dismiss the Parole Board's objections to the requests for production of documents,

---

[9] This Court has determined that "if [Toland] is able to show that the pre-1996 standards should apply, then this Court's analysis as to whether the [Parole] Board is ignoring statutory mandates such that it is denying [Toland] due process of law is necessarily affected." *Toland*, 263 A.3d at 1240.

and limit document production to the criminal records the Parole Board reviewed prior to Toland's parole interviews in 2017, 2018, and 2019.

Likewise, Toland's interrogatories strike at the heart of the Parole Board's exercise of discretion in weighing the factors relevant to the grant of parole. He seeks to learn how the Parole Board evaluates an inmate's likelihood of success on parole; how psychological evaluations play into the grant of parole; and whether the Department of Corrections is a better judge of character than the Parole Board. This information is not relevant to Toland's constitutional claim, which can be decided solely on review of the statute and the Parole Board's written explanation for its decision. I would deny Toland's motion to dismiss the Parole Board's objections to the first and second sets of interrogatories.

The majority posits that the dissent has raised a relevance objection "sua sponte," but the record establishes otherwise. *Toland v. Pennsylvania Board of Probation and Parole*, __ A.3d __ (Pa. Cmwlth., No. 315 M.D. 2018, filed February 14, 2024), slip op. at 43. In its response to Toland's motion to dismiss the Parole Board's objections to his discovery requests, the Board stated that the information Toland sought was not reasonably calculated to lead to the discovery of admissible evidence, because it did not relate to Toland's recent parole denial decision. Rather, Toland sought information about the denials of 2017 and 2018. *See* Board Answer ¶¶1, 3-7, 21-28, 30-35. In its brief, the Parole Board also challenged the relevancy of the discovery requests. Board Brief at 4, 7, 9-12, 16. The Parole Board was not required to elaborate on its relevance objection in responding to each objection. It explained its relevance objection at the beginning of its brief and incorporated that argument into its other responses. Board Brief at 7

("As stated previously, only documents to the most recent parole review decision . . . would be relevant.").

This leaves the mootness question. Toland's amended petition for review challenges his parole denials in 2017, 2018, and 2019. The Parole Board contends those decisions are now moot because it subsequently reviewed and denied Toland parole in 2022.[10] Toland has not challenged that decision, which is the only one relevant to his current incarceration.[11]

To support its suggestion of mootness, the Parole Board provided a declaration of the Parole Board Secretary, Deborah Carpenter, that the Board used the *former* Parole Law guidelines in its most recent (2022) parole decision on Toland's application for parole. Toland has neither challenged the 2022 parole

---

[10] This mootness analysis was followed by the United States District Court in *Toland v. McVey*, No. 1:CV-08-0487, 2011 WL 1225557 (M.D. Pa. March 31, 2011). There, Toland filed a civil rights action to challenge the Parole Board's 2009 decision denying him parole as violating the *ex post facto* clause and due process clause. Toland sought injunctive relief in the form of a new parole consideration. While this action was pending, the Parole Board reviewed Toland for parole and on December 10, 2010, issued a decision denying parole. The District Court dismissed Toland's civil rights action because Toland had received a new parole consideration by the Parole Board. Accordingly, the District Court concluded that Toland's "request for injunctive relief as contained in the . . . complaint *is now moot*." *Id*. at *2 (emphasis added).

[11] The majority posits that Toland could have reasonably concluded that it was premature to seek leave to file a Second Amended Petition to address the 2022 denial of parole because the Court scheduled argument on the Board's suggestion of mootness together with the argument on Toland's motion. Respectfully, there is no way to know why Toland has not challenged the Parole Board's 2022 decision.

The Parole Board denied Toland parole on November 15, 2022, when Toland's motion to dismiss the Board's responses to his discovery request was pending. The Board did not file its suggestion of mootness until March 6, 2023. On April 25, 2023, this Court denied the Parole Board's application for a stay of all proceedings pending a determination on its suggestion of mootness. Accordingly, Toland was free to challenge the 2022 denial of his parole in a new action or in an amendment to his pending action. He did neither. Notably, the statute of limitations for a mandamus action is six months. 42 Pa. C.S. §5522(b).

decision nor contested the Parole Board's statement that the pre-1996 Parole Code standards were used to arrive at its decision to deny him parole in 2022.

Toland appears to have been granted the relief he seeks in his challenge to the Parole Board's decisions of 2017, 2018, and 2019, *i.e.*, a new parole interview. In 2022, Toland's parole was considered on the basis of the statutory standards he believes are appropriate, given his conviction prior to 1996. There is nothing to be accomplished by revisiting the Parole Board's 2017-2019 parole decisions because, in 2022, he was given a review "using the statutes, procedures, guidelines and discretion" of the *former* Parole Law.[12] Amended Petition for Review at 21, ¶6. I would grant the Parole Board's suggestion of mootness.[13]

---

[12] In *Hughes v. Pennsylvania Board of Probation and Parole*, 977 A.2d 19 (Pa. Cmwlth. 2009), a parolee challenged the revocation of his parole and the recalculation of his maximum parole date in a January 31, 2008, decision. On April 14, 2008, the Board issued a second decision, but the parolee did not appeal that decision. Nevertheless, this Court held the new decision did not moot the inmate's appeal. In a dissent, Judge McGinley wrote as follows:

> [Hughes] never appealed the April 14, 2008, recalculation order. *Once the new calculation of the maximum date was announced by the Board, this new calculation rendered Hughes's challenge to the January 31, 2008, recalculation order moot* . . . . I would grant the petition to withdraw and affirm on the merits.

*Hughes*, 977 A.2d at 27-28 (McGinley, J., dissenting, joined by Leadbetter and Leavitt, JJ.) (internal citation omitted) (emphasis added).

I stand by the *Hughes* dissent. A new parole decision by the Parole Board renders any prior decision moot, whether a decision to deny parole or to revoke parole. Unlike a parole revocation, the Parole Board's decision to deny parole is generally not subject to judicial review. Accordingly, the logic of the *Hughes* dissent carries greater weight here.

[13] The majority concludes that, even assuming this case is moot, it is capable of repetition yet evading review and, thus, an exception to mootness exists. "'[I]t is only in very rare cases where exceptional circumstances exist or where matters or questions of great public importance are involved, that this [C]ourt ever decides moot questions or erects guideposts for future conduct or actions.'" *Brouillette v. Wolf*, 213 A.3d 341, 368 (Pa. Cmwlth. 2019) (quoting *Wortex Mills v. Textile Workers Union of America, C.I.O.*, 85 A.2d 851, 857 (Pa. 1952)). For constitutional claims to fall within the exception to the mootness doctrine, a petitioner must demonstrate: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or

The ability to pursue an *ex post facto* challenge to a decision of the Parole Board is a narrow exception to Pennsylvania's long-standing jurisprudential rule that an inmate may not appeal the Parole Board's denial of parole. Toland seeks what cannot be granted: a review of the Parole Board's exercise of discretion in denying his requests for parole in 2017, 2018, and 2019. I would deny Toland's motion to dismiss and sustain the Parole Board's suggestion of mootness.

_____

MARY HANNAH LEAVITT, President Judge Emerita

---

expiration; and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again.'" *Brouillette*, 213 A.3d at 368 (quoting *Mistich v. Pennsylvania Board of Probation and Parole*, 863 A.2d 116, 121 n.6 (Pa. Cmwlth. 2004)). Toland filed his initial petition for review over 12 years after he was denied parole in March 2004, and nearly 9 months after he was denied parole in August 2017. Toland did not file the instant amended petition until nearly two years after he was denied parole in December 2018, and nearly a year after he was denied parole in October 2019. Toland has never sought to expedite the consideration of this matter throughout its pendency, while the intervening passage of time and subsequent parole decisions have mooted his claims. Under these circumstances, the rarely invoked exception to the mootness doctrine should not be invoked. *See generally Brouillette*, 213 A.3d at 368-69 (exception to mootness doctrine did not apply to claim about the general appropriations bill for fiscal years 2016-2017 and 2017-2018, which was moot due the expiration of the relevant fiscal years; the subsequent enactment of remedial legislation; and the subsequent enactment of the general appropriations bill for fiscal year 2017-2018).

MHL-13
